# Griel Bros. & Co. v. Pollak.

*Action of Assumpsit, for Money Had and Received.*

1. *Action for money had and received; sufficiency of complaint.*—A count of a complaint which avers, in substance, that plaintiff, the defendant and others, who were creditors of a certain firm, had writs of attachment issued and levied on a stock of goods as the property of such firm; that the goods were sold by the sheriff, and the proceeds applied in payment of the several judgments rendered in the attachments suits; that the defendants in the present action were paid a specified sum; that a third person, who claimed the goods which

[Griel Bros. & Co. v. Pollak.]

had been levied upon brought actions of trespass against the several attaching creditors to recover damages for the wrongful levy of the attachments ; that in the suit against the plaintiff a judgment was obtained by such person, for the full value of the goods, which judgment was paid by the plaintiff, and that in the other actions of trespass there were either judgments for plaintiff for costs only or of dismissal,—states a cause of action in assumpsit against the defendants for money had and received, and is not demurrable.

2. *Same; statute of limitation of one year, not pleadable.*—The statute of limitations of one year is no bar to an action for money had and received, and is not pleadable to such an action.

3. *Same; estoppel* —Where, in an action of assumpsit by one of several attaching creditors against other attaching creditors to recover for money had and received, it is shown that the plaintiff, the defendants and others, who were creditors of a certain firm, sued out writs of attachment and had them levied upon a stock of goods as the property of their debtor firm, that the goods were sold by the sheriff and the proceeds applied in payment of the several judgments rendered in the attachment suits, and that defendants were paid a specified amount, the fact that the plaintiff in the pending suit did not object to the payment of defendants' judgment out of such proceeds, does not estop him from claiming the money so paid to the defendants after he had paid a *bona fide* judgment obtained against him for the value of the goods in an action of trespass for the wrongful levy of the attachment.

4. *Same; when payment of judgment invests title.*—Where several creditors of a common debtor sue out writs of attachment and have them levied upon a stock of goods as the property of their debtor, and after the goods are sold by the sheriff, and the proceeds applied in payment of the several judgments rendered in the attachment suits, and a third person, who claimed to be the owner of the goods levied upon and sold, brings actions of trespass against the several attaching creditors for the wrongful levy of their respective attachments, and recovers a *bona fide* judgment against one of said attaching creditors for the full value of the goods wrongfully attached, by the payment of this judgment the creditor against whom it is rendered becomes invested with the title to the goods levied on, or with a right to the money arising from their sale, by relation, as of the time of the trespass ; and can maintain an action for money had and received against any of the attaching creditor to whom the money arising from the tortious sale of the goods was paid on their judgment against the defendants in attachment, for the amount so paid to them.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN R. TYSON.

Harmon Brothers were merchants in Union Springs, Ala., up to the latter part of January, 1886. At that date they sold and conveyed their stock of goods to their father, John Harmon, upon the alleged consideration of

an indebtedness to him in an amount equal to or exceeding their full value. John Harmon was placed in possession, and was in possession and control of the goods on or about January 5, 1887, when appellee, Pollak, caused an attachment, issued at his suit against Harmon Brothers for $723.45, the amount due from them to him, to be levied upon the stock of goods as the property of Harmon Brothers. On the same day, and at the same time, Vandiver & Co., creditors of Harmon Brothers, caused their writ of attachment to be levied upon the same goods as the property of Harmon Bros. Under these two writs of attachment, the sheriff, on being indemnified and required to do so, took the entire stock of goods into his custody on January 5, 1887. On the 13th day of January, 1887, appellants, Griel Bros. & Co., obtained an attachment against Harmon Bros. on a debt due them of $380.17, and had it, upon indemnifying the sheriff, levied upon the same goods, then in his custody, as the property of Harmon Bros. Other creditors of Harmon Bros. also had attachments issued and levied upon these goods subsequent to the levy of Pollak's writ and that of Vandiver & Company.

No claim was interposed to this property by any one; and the proceeds of the sale thereof by the sheriff was, on the motion of the sheriff for instructions, by the order of the court, placed to the satisfaction of the judgments recovered by appellee and Vandiver & Company, respectively, and then to the judgments of the other attaching creditors in the order in which their writs were levied. Appellants received on their judgment $383.97.

In the mean time, John Harmon brought his several actions of trespass against Pollak and the other creditors of Harmon Brothers, who had levied upon the goods under their respective writs of attachment . The case against Pollak was, after much litigation in the court below, and in the Supreme Court—the case having been twice carried to the Supreme Court by appeal—prosecuted to judgment for about $6,000. This judgment was solely for the value of the goods, and was paid by Pollak, shortly before he commenced the present action. The other suits in trespass were either dismissed, or judgments for costs only recovered.

Upon the foregoing facts, appellee, Ignatius Pollak, commenced his action against the appellants, Griel Bros. & Co., for money, which, *ex equo et bono*, belonged to

[Griel Bros. & Co. v. Pollak.]

him. The complaint contains but one special count based upon the facts above stated. The defendant assailed the complaint by demurrers, assigning several grounds, all of which, however, present in different ways, but the one ground, that the complaint did not disclose a sufficient cause of action. The demurrers were overruled, and the defendants excepted. The defendants pleaded as follows : ''Now come defendants by their attorneys and for further answer to said complaint filed in this cause pleads in short by consent : 1st. General issue. 2d. The statute of limitations of one year. 3d. Estoppel of plaintiff by virtue of his allowing money distributed to defendants without objection.'' To plea number two the plaintiff demurred upon the following ground : ''That the plea is an answer to an action on the case, and the complaint discloses an action for money had and received.'' To the third plea the defendant demurred on the following grounds : ''(1.) That the facts disclosed in said plea do not show a duty upon the plaintiff at the time named to have objected to a distribution of the funds. (2.) That the action disclosed by the complaint is for money had and received at the time named, and if the facts named in the plea are a defense, they are available under the general issue.'' These demurrers were sustained, and to this ruling the defendants duly excepted. Trial was had upon issue joined upon the plea of the general issue, and the evidence disclosed the facts as stated above.

The court at the request of the plaintiff gave the general affirmative charge in his behalf, and refused to give the general affirmative charge asked by the defendants. To each of these rulings the defendants separately excepted. There was judgment for the plaintiff. The defendants appeal, and assign as error the ruling of the court upon the pleadings, the giving of the general affirmative charge for the plaintiff, and the refusal to give a like charge for the defendants.

GRAHAM & STEINER, and DAVID T. BLAKEY, for appellants.—The payment of a judgment in trespass for the full value of the goods taken, does not vest the title to such goods in the trespasser. This only occurs where the amount paid by the wrong-doer includes the value of the article, for the taking of which an action of trespass

was brought. Four things must come to pass before such a state of affairs can exist: *First*, there must be a trespass; *Second*, there must be a judgment against the trespasser for the wrong done by him; *third*, such judgment must have been paid; and, *fourth*, the verdict and judgment rendered thereon must include the value of the article for the taking of which the action is brought.—1 Waterman on Trespass, p. 368, § 411; *Fox v. The Northern Liberties*, 3 Watts & Serg. 103; *Jones v. McNeil*, 2 Bailey, (S. C.) 466; *Thurst v. West*, 31 N. Y.'210; *Goldsmith v. Stetson*, 39 Ala. 183.

The full amount of Pollak's claim against Harmon Bros. was paid him and he stood by, at the time appellants were paid their money, under said order of the circuit court of Bullock county, and said nothing. Hence he should not be permitted to say anything now.— *Reynolds v. Roebuck*, 37 Ala. 408; Bigelow on Estoppel, 475, *et seq.*, 585 and notes.

ROQUEMORE & WHITE, *contra.*—1. The payment of a judgment in trespass for the full value of the goods taken, vests the title to the goods, by operation of law, in the trespasser.—Waterman on Trespass, § 411; *Spivey v. Morris*, 18 Ala. 254; *Blann v. Crocheron*, 19 Ala. 647; *Goldsmith v. Stetson*, 39 Ala. 183; *Screws v. Watson*, 48 Ala. 635.

2. Upon the payment of such judgment the title to the property is vested in the defendant by relation, as of the time of the taking.—*Acheson v. Miller*, 2 Ohio St. 203, 59 Amer. Dec. 663; *Daniel v. Holland*, 4 J. J. Marsh. 19; *Hepburn v. Sewell*, 5 Har. & J. 211, 9 Amer. Dec. 512; *Howard v. Smith*, 12 Pick. 202.

HARALSON, J.—1. In the transcript presented, there is but one count in the complaint, and that a special one. The judgment entry recites, that the complaint was amended by adding the common counts, and counsel on both sides in their briefs, treat the complaint as containing a count for money had and received, and so, therefore, will we.

There was no error in overruling the defendant's demurrer to the special count. The facts averred constitute an action in assumpsit.—*Whilden v. M. & P. N. Bank*, 64 Ala. 1; *Mobile Life Ins. Co. v. Randall*, 74 Ala.

170; *Sharpe v. N. Bank of Birmingham*, 87 Ala. 648.

2. Bigelow very properly formulates an estoppel by conduct as follows; ''1. There must have been a false representation or concealment of material facts. 2. The representation must have been made with knowledge, actual or virtual, of the facts. 3. The party to whom it was made must have been ignorant, actually and permissibly, of the truth of the matter. 4. It must have been made with the intention, actual or virtual, that the other party should act upon it. The other party must have been induced to act upon it.''

Tested by these rules, the facts relied on by the defendant do not estop the plaintiff to institute and prosecute this action. There was no error, therefore, in sustaining the demurrer to defendants' pleas of the statute of limitations of one year—not pleadable to an action of assumpsit—and of estoppel, on the plaintiff to prosecute this suit on the facts averred in the special count. Issue was joined, and the cause was tried on the plea of the general issue.

The real contention between the parties—the plaintiff affirming and the defendant denying—arises on the proposition, that by the payment of John Harmon's judgment recovered against the plaintiff in trespass for the wrongful levy of his attachment upon John Harmon's goods, for the goods of the defendants in attachment—Harmon Bros.—he became invested with the title to the goods levied on and sold, or with the right to the money arising therefrom, by relation, as of the time of the trespass, and that the defendants having afterwards received money arising from a tortious sale of the goods, paid to them by the sheriff on their judgment against the said defendants in attachment, are liable to plaintiff for money had and received—the goods having been levied on under defendants' attachment as well as under plaintiff's and others', and sold under each and all of them.

This question as might be supposed, after so great a time, has not been left undecided. The better opinion, sustained by our own rulings, seems to be in favor of the proposition as asserted by the plaintiff. There are many authorities which hold that a judgment in trover or trespass for the value of the property for its wrongful conversion or seizure, amounts to an investiture of title in the defendant, while there are

many more that hold, that there must be a satisfaction of the judgment in order to vest the title to the chattle in defendants, whereas, it seems to be generally agreed, that where the judgment has been satisfied by the defendant, the title is vested in him. See *Spivey v. Morris*, 18 Ala. 255, where the authorities are collated.

In *Goldsmith v. Stetson*, 39 Ala. 191, a case similar to this, as to the question here involved, it was said, that the money did not become the property of the defendants, on judgment rendered against them for an alleged trespass committed by them, in procuring the levy of an attachment on a stock of goods in the possession of plaintiff—by mere force of the judgment in the trespass suit against them, and that it required satisfaction of such judgment in order to vest the title of the property in the trespassers. And in another connection the court said : "When the injured party has obtained a verdict and judgment for damages for taking goods, the property is changed and the right to the goods is vested in the defendant, at least after payment of the judgment." *Screws v. Watson*, 48 Ala. 635.

The Ohio court, in the well considered case of *Acheson v. Miller*, 2 Ohio St. 206, holds that, "where a party for an injury to his property, elects to proceed by an action of trespass or trover for its value, the whole proceeding relates to the time of the taking or conversion ; the controversy all relates to the property as of that time ; the criterion of damages is the value of the property at the time of such a taking or conversion. The party in effect abandons his property as of that time to the wrong-doer, and proceeds for its value ; so that when judgment is obtained and satisfaction made, the property is vested in the defendants, by relation, as of the time of taking or conversion." See also to the same effect *Daniel v. Holland*, 4 J. J. Marsh. 19 ; *Hepburn v. Seawell*, 4 Har. and J. (Md.) 211 ; *Jones v. McNeil*, 2 Bailey (S. C.) 466 ; *Wooley v. Carter*, 2 Halstead (N. J.) 85 ; *Howard v. Smith*, 12 Pick. 202 ; *Thurst v. West*, 31 N. Y. 210 ; *Fox v. The Northern Liberties*, 3 Watts & Serg. 107 ; 1 Waterman on Trespass, § 411.

Now, the undisputed evidence shows, that the judgment in the trespass case against plaintiff was rendered against him on evidence tending to show that the ownership and title to the goods was in the plaintiff in the

said trespass suit; that defendant in that suit—plaintiff in this one—defended said trespass suit to the best of his ability, and employed able counsel and did all in his power, to prevent a recovery against him; that the judgment rendered against him was for the sum of $6,000, "*the proven value of said goods and the costs of suit*," and that he paid off said judgment in full, "*which was the full value of the goods levied on under said attachments.*" This evidence is full and conclusive to sustain the averment of the complaint, that $6,000 "was the full value of the stock of goods as shown by proof on the trial as to the value of said goods;" and also shows. that the verdict and judgment were for the value of the goods and costs of suit, and included no other element of damages.

There is no room for the argument indulged, that the verdict might have included punitive damages, and it that ought not for that reason to be sustained, since it would sustain a principle that would leave room for fraud and collusion between an attaching creditor and a fraudulent defendant in attachment, by which his property might be shielded from his other creditors. As to the element of punitive or vindictive damages in a case of the kind, if the verdict were supposed to be enhanced thereby, it would always be an easy matter to show, what the proven value of the goods on the trial was, and by discarding all else, limit the liability of the defendant to their value. The value of the goods is always the most material inquiry in such cases. Under the general issue, on which this case was tried, the *bona fides* of the transfer of Harmon Bros. to John Harmon, the plaintiff in the trespass suit against the plaintiff, might have been investigated, and the defendants were privileged to show that the goods levied on and sold were not the property of John Harmon; but the rightful ownership of John Harmon to the goods sold was not touched at all on the trial of this suit.

The general charge for the plaintiff was rightly given, and a like charge for the defendant properly refused.

Affirmed.